UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROOSEVELT VANN, JR.,

                           Plaintiff,

      v.

RICHARD PERSICO; RIGGS DISTLER &
COMPANY, INC.; LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA, LABORERS LOCAL 60;
JACINTO JAY FRAGOSO; PCT
CONTRACTING LLC; MICHAEL
BASILONE; *and* CARLOS AFONSO,

                           Defendants.

No. 20-CV-628 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Robert Wisniewski, Esq.
Robert Wisniewski P.C.
New York, NY
*Counsel for Plaintiff*

Clifford H. Green, Esq.
Clifford H. Greene & Associates
New Rochelle, NY
*Counsel for Defendants Richard Persico and PCT Contracting LLC*

Michael Lauricella, Esq.
Archer & Greiner, P.C.
Hackensack, NJ
*Counsel for Defendant Riggs Distler & Company, Inc.*

Douglas Diaz, Esq.
Archer & Greiner, P.C.
Haddonfield, NJ
*Counsel for Defendant Riggs Distler & Company, Inc.*

Steven H. Kern, Esq.
Barnes, Iaccarino, & Shepherd, LLP
Elmsford, NY
*Counsel for Defendants Laborers International Union of North America, Laborers Local 60 and Jacinto Jay Fragoso*

Stephen D. Hans, Esq.
Stephen D. Hans & Associates, P.C.
Long Island City, NY
*Counsel for Defendant Michael Basilone*

KENNETH M. KARAS, United States District Judge:

Roosevelt Vann, Jr. ("Plaintiff") brings this Action against Richard Persico ("Persico"), Riggs Distler & Company, Inc. ("Riggs"), Laborers International Union of North America, Laborers Local 60 ("Local 60"), Jacinto "Jay" Fragoso ("Fragoso"), PCT Contracting LLC ("PCT"), Michael Basilone ("Basilone"), and Carlos Afonso ("Afonso"; collectively, "Defendants"), alleging that Defendants (1) unlawfully discriminated against him on the basis of race via Defendants' refusal to allow Plaintiff to join a union, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; 42 U.S.C. § 1981; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; (2) retaliated against Plaintiff for terminating Plaintiff's employment shortly after Plaintiff filed complaints with relevant regulatory agencies, in violation of the same statutes; and (3) violated numerous provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and New York Labor Law ("NYLL") in, inter alia, failing to pay Plaintiff union wages and provide Plaintiff with wage notices. (*See generally* Second Am. Compl. (Dkt. No. 58).) Before the Court are Riggs's Motion To Dismiss Counts One, Three, Seven, and Nine of the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Riggs's Motion"), and Local 60 and Fragoso's (together, the "Union Defendants") Motion To Dismiss Count One of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or Motion For Judgment on

the Pleadings on Count One of the SAC pursuant to Federal Rule of Civil Procedure 12(c)

("Union Defendants' Motion"; together with Riggs's Motion, the "Motions").  (*See* Riggs's Not.

of Mot. (Dkt. No. 93); Union Defs.' Not. of Mot. (Dkt. No. 96).)[1]  For the following reasons,

Union Defendants' Motion is denied and Riggs's Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the SAC and assumed to be true for purposes of

resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension*

*Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) (Rule 12(b)(6)

motion); *Cho v. Blackberry Ltd.*, 991 F.3d 155, 162 (2d Cir. 2021) (Rule 12(c) motion).

#### 1.  Background to the Parties

Plaintiff is a Black man and was employed by PCT, and later Riggs, as a flagger on gas

utility projects in Westchester County between approximately March 2010 and January 2018.

(*See* SAC ¶¶ 1, 88, 89.)

PCT is a New York limited liability corporation with its principal place of business in

New York.  (*See id.* ¶ 11.)  Riggs is a Maryland corporation with its principal place of business

in New Jersey.  (*See id.* ¶ 12.)  Both PCT and Riggs are gas utility contractors and provide utility

and heavy construction services in New York state, including most notably as a "preferred

contractor" for Consolidated Edison of New York ("Con Ed").  (*See id*. ¶¶ 14, 47, 48, 51.)

Plaintiff alleges that in November 2016, Riggs acquired PCT's assets and business pursuant to an

---

[1] After both Motions were filed, Plaintiff, PCT, Persico, and Basilone agreed to a stipulation by which PCT, Persico, and Basilone adopted and relied on all of the arguments set forth in Riggs's Motion and Union Defendants' Motion.  (*See* Stip. (Dkt. No. 108).) Accordingly, the Court's instant rulings are binding on PCT, Persico, and Basilone, to the extent relevant.

asset purchase agreement, which in actuality was a de facto merger and resulted in Riggs becoming PCT's successor-in-interest.  (*See id.* ¶¶ 15, 47–62.)  Persico is a White man, and at all relevant times was PCT's owner and president, with operational control of PCT's business.  (*See id.* ¶¶ 17–18.)  Afonso and Basilone are also White men, and at all relevant times were PCT and then Riggs's project managers, and allegedly had the authority to set the terms and conditions of Plaintiff's employment.  (*See id.* ¶¶ 19–22.)

PCT and Riggs were "union shop[s]" and had numerous collective bargaining agreements ("CBAs") with various unions, including Local 60 and Local 731 (a non-party).  (*Id.* ¶¶ 50, 128.) Local 60 is an unincorporated association headquartered in Westchester County, and is a chapter of the Laborers International Union of North America.  (*See id.* ¶ 25.)  Fragoso is a White man and at all relevant times was Local 60's Recording Secretary and Union Delegate to PCT, and later Riggs, and allegedly had the authority to set the terms and conditions of Plaintiff's employment.  (*See id.* ¶¶ 26–27.)

### 2.  Plaintiff's Employment with PCT & Riggs

In or around March 2010, Plaintiff was hired by Basilone as a flagger for PCT.  (*See id.* ¶ 88.)  Plaintiff alleges that Basilone had a "stated animosity to [B]lack people," but that Basilone agreed to hire Plaintiff after being "coaxed and cajoled" to do so by White PCT workers who had worked with Plaintiff on a project when Plaintiff was employed by another company and observed his skills.  (*See id.* ¶ 106.)  When Plaintiff was hired by PCT, he was one of three Black people working for PCT out of a total workforce of approximately 150 workers; the majority of PCT workers were White and/or Hispanic.  (*See id.* ¶¶ 105, 107.)

Shortly after Plaintiff began working for PCT, Plaintiff alleges that he was approached by a foreman and several coworkers who asked Plaintiff about his union membership status and told Plaintiff that all PCT flaggers were members of either Local 60 or Local 731 (Local 60's "sister

organization" in New York City).  (*See id.* ¶¶ 108–09.)  Plaintiff alleges that he asked Basilone

in October 2010 if he could join a union, and Basilone told him that if Plaintiff joined a union,

Basilone would fire Plaintiff.  (*See id.* ¶ 110.)  Plaintiff approached Basilone again in late 2011,

and Basilone again denied his request; Plaintiff alleges that he "understood that he was denied

membership in Local 60 because he was [B]lack."  (*Id.* ¶¶ 112–13.)  Plaintiff also alleges that he

observed Basilone and Afonso treat Plaintiff's "light-skinned colleagues" better than they treated

Plaintiff and other Black people, which included Basilone frequently sharing "inappropriate and

filthy jokes about [B]lack people with Plaintiff" and Afonso turning away Black job applicants

without an interview, even when positions were available.  (*Id.* ¶¶ 115–18.)  This behavior led

Plaintiff to believe that asking to be sponsored for union membership or applying directly to

Local 60 would be futile.  (*See id.* ¶ 119.)

 Plaintiff alleges that this belief was furthered by his observations of the behavior of Local

60's field representatives, who frequently visited PCT jobsites, avoided talking to Plaintiff, and

never asked if Plaintiff was a union member.  (*See id.* ¶ 120.)  Plaintiff alleges that in or about

mid-2014, Fragoso became the Local 60 field representative and was required to ensure that only

union members worked on PCT, and later Riggs, projects.  (*See id.* ¶ 121.)  Accordingly,

Fragoso would visit PCT's, and later Riggs's, jobsites bimonthly to hand out union paraphernalia

and check in, and would "ostentatiously avoid Plaintiff, even though he knew who Plaintiff was,

especially since Plaintiff was the only PCT [B]lack worker at the jobsite."  (*Id.* ¶ 122.)  Fragoso's

conduct further instilled in Plaintiff a belief that applying for membership in Local 60 would be

futile.  (*See id.* ¶ 124.)  Moreover, Plaintiff alleges that "less than ten (10) of Local 60's several

thousand members are [B]lack."  (*Id.* ¶ 138.)

After Riggs acquired PCT, Riggs announced to PCT's employees that Riggs had a 100% unionized workforce, which made Plaintiff hopeful that he would finally be permitted to join a union.  (*See id.* ¶ 128.)  However, Plaintiff alleges when he returned to work in March 2017 after a winter furlough, he was not approached by Basilone, Afonso, or Fragoso about joining a union. (*See id.* ¶ 129-30.)  In April 2017, Plaintiff requested a meeting with Fragoso to discuss his union membership status, and when the two met, Fragoso allegedly told Plaintiff that he could not join Local 60 because Basilone and Afonso had instructed Fragoso not to allow Plaintiff into the union.  (*See id.* ¶¶ 131–32.)

### 3.  Plaintiff's Discrimination Charges & Termination

Plaintiff alleges that by June 22, 2017, he "had had enough" and filed a complaint against Riggs, PCT, Basilone, and Afonso with the New York State Division of Human Rights ("DHR"). (*Id.* ¶ 141; *see also id.* ¶ 38.)  On July 21, 2017, Plaintiff filed a second charge with DHR naming Local 60 and Fragoso.  (*See id.* ¶¶ 39, 142.)  Plaintiff alleges that "[a]s soon as Defendants found out about Plaintiff's complaints," Afonso and Basilone visited Plaintiff at his jobsite and berated Plaintiff about the complaints.  (*Id.* ¶ 143.)  Specifically, Plaintiff alleges that Basilone screamed at Plaintiff: "Why did you file a complaint against us after all we have done for you.  We gave you a job!"  (*Id.*)  Plaintiff further alleges that in early October 2017, he was approached for a "sit down" with Local 60's union boss, who told him that he did not know "what happened between Plaintiff and Fragoso, but Plaintiff would not be allowed to join Local 60."  (*Id.* ¶ 144.)[2]

---

[2] While not material to the instant Motions, the Court notes that it seems that the SAC may contain a typographical error.  Paragraph 144 states that during Plaintiff's conversation with the union boss, Plaintiff was told he "would *not* be allowed to join Local 60."  (SAC ¶ 144 (emphasis added).)  However, the following paragraph states that Plaintiff "began to think that his plight was over," (*id.* ¶ 145), suggesting that Plaintiff *was* allowed to join Local 60.  This would also be consistent with Plaintiff's previous representations in his original Complaint, in which he alleged that he was "offered union [membership] by Local Union 60 to shut [him] up" after he filed his charges with DHR.  (*See* Compl. at unnumbered 56.)

In December 2017, Plaintiff was approached by a new supervisor for Riggs, who gave Plaintiff's foreman Plaintiff's paycheck and instructed the foreman to tell Plaintiff it was his last day of work. (*See id.* ¶ 145.)

Meanwhile, on September 27, 2017, DHR issued a "Determination and Order" as to Plaintiff's first charge against Riggs, PCT, Basilone, and Afonso, finding no probable cause to believe that Riggs, PCT, Basilone, and Afonso discriminated against Plaintiff. (*See id.* ¶ 40.) On October 11, 2017, Plaintiff submitted a written request to the Equal Employment Opportunity Commission ("EEOC") for review of DHR's findings. (*See id.* ¶ 41.) On December 21, 2017, DHR issued a "Determination and Order" as to Plaintiff's second charge against Local 60 and Fragoso, also finding no probable cause to believe that Local 60 and Fragoso discriminated against Plaintiff. (*See id.* ¶ 43.) Plaintiff alleges that he has not heard back from EEOC as to his first charge and has not received a right to sue letter from the EEOC concerning either charge. (*See id.* ¶¶ 37, 41.)

### 4.  Plaintiff's Compensation During His Employment

Plaintiff alleges that throughout his employment with PCT, and later Riggs, he "regularly reported to work anywhere from 6:00 a.m. to 9:00 a.m., with no particular quitting time," and "regularly worked over 40 hours per week." (*Id.* ¶¶ 89, 94.) Plaintiff was paid $18 per hour between March 2010 and June 2014; $23 per hour between June 2014 and December 2016; and $25 per hour between December 2016 and December 2017. (*See id.* ¶¶ 91–92.) When Plaintiff worked over 40 hours per week, he was paid overtime at a rate of 150% of his base pay. (*See id.* ¶ 94.)

However, Plaintiff alleges that the CBAs entered into between PCT, and later Riggs, and Local 60 mandated the base wage for a flagger—like Plaintiff—to be "in excess of $30 per hour." (*Id.* ¶ 83.) The CBAs also provided other benefits, including premium holiday pay,

vacation pay, medical benefits, and retirement benefits. (*See id*.) The CBAs thus mirrored relevant state and local regulations, which allegedly provided that "the base prevailing wage for a flagger in Westchester County was in excess of $22 per hour" and that "a worker was entitled to certain premium pay for overtime hours and holidays." (*Id.* ¶ 81.) Moreover, Con Ed mandated that its vendors "use unionized workforce and pay and ensure payment of union wage rates and supplements to all workers furnishing labor on the sites of such contracted for projects." (*Id.* ¶ 82.) Because Plaintiff was allegedly never permitted to join Local 60, he was never paid the proper prevailing wage or union pay rates—including for overtime pay—and never received the benefits afforded to Local 60 members. (*See id.* ¶¶ 87, 98.) Plaintiff also alleges that he was never presented with a wage notice as required under NYLL § 195.1. (*See id.* ¶ 103.)

### B. Procedural History

On January 21, 2020, Plaintiff filed his initial Complaint pro se, bringing claims against the same defendants, though at that time, Plaintiff misidentified Persico as equivalent to PCT. (*See generally* Compl. (Dkt. No. 2); *see also id.* at 3 (identifying a defendant as "Persico AKA PCT Contracting").) Plaintiff was granted leave to proceed in forma pauperis ("IFP") on February 5, 2020, (*see* Dkt. No. 3), and on February 24, 2020, the Court entered an Order of Service, (*see* Dkt. No. 6). On March 19, 2020, counsel for Union Defendants filed acknowledgements of service on Union Defendants. (*See* Dkt. Nos. 9, 10.)

On June 18, 2020, Union Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss pursuant to Rule 12(b)(6) based on, inter alia, Plaintiff's alleged failure to exhaust his administrative remedies as to his Title VII claims, in addition to a motion for a more definite statement pursuant to Rule 12(e). (*See* Dkt. No. 15.) On July 29, 2020, the Court set a briefing schedule on Union Defendants' anticipated motions, (*see* Dkt. No. 16), and on

August 29, 2020, Union Defendants filed their motions, (*see* Union Defs.' Not. of Mots. (Dkt. No. 17); Decl. of Steven H. Kern in Supp. of Union Defs.' Mots. (Dkt. No. 17-1); Union Defs.' Mem. of Law in Supp. of Mots. (Dkt. No. 17-4)).  On September 14, 2020, a letter from Plaintiff was docketed, in which Plaintiff asked the Court to "consider re-opening [his] case," (Dkt. No. 19), which the Court construed as Plaintiff's Opposition to Union Defendants' motions, (*see* Dkt. No. 20).  Union Defendants filed their Reply on October 11, 2020.  (*See* Union Defs.' Reply Mem. of Law in Supp. of Union Defs.' Mots. (Dkt. No. 21).)

On December 3, 2020, notices were filed on the docket indicating successful service of Riggs and Afonso by the U.S. Marshals Service and unsuccessful service of Persico and Basilone.  (*See* Dkt. Nos. 27–30.)  On November 20, 2020, Riggs filed a pre-motion letter in anticipation of filing a motion to dismiss pursuant to 12(b)(6) based on, inter alia, Plaintiff's failure to exhaust his administrative remedies as to his Title VII claims.  (*See* Dkt. No. 26.)  On December 4, 2020, the Court set a briefing schedule on Riggs's anticipated motion.  (*See* Dkt. No. 31.)  On January 7, 2021, Riggs filed its motion to dismiss.  (*See* Riggs's Not. of Mot. (Dkt. No. 33); Decl. of Michael J. Lauricella in Supp. of Riggs's Mot. (Dkt. No. 33-1); Riggs's Mem. of Law in Supp. of Riggs's Mot. (Dkt. No. 33-2).)  Plaintiff failed to file a response to Riggs's motion.  (*See generally* Dkt.)

On March 30, 2021, the Court issued an Opinion & Order on both Union Defendants' and Riggs's motions.  (*See* Op. & Order ("MTD Op.") (Dkt. No. 34).)  The Court granted in part and denied in part both motions; as relevant to the instant dispute, the Court denied Union Defendants and Riggs's motion to dismiss on exhaustion grounds without prejudice to refiling a motion for summary judgment after the Parties have conducted limited discovery.  (*See id.* at 19.)

On April 29, 2020, counsel for Plaintiff filed notices of appearance on Plaintiff's behalf, (*see* Dkt. Nos. 35, 36), and the Court granted Plaintiff an extension of time to file an amended complaint and successfully serve process on Persico and Basilone, (*see* Dkt. No. 39).  On May 11, 2021 and June 2, 2021, respectively, Plaintiff filed proof of service of Basilone and Persico.  (*See* Dkt. Nos. 43, 48.)  The Court held a status conference on May 18, 2021 in which the Court instructed Plaintiff to file an amended complaint by June 3, 2021 and instructed the Parties to "conduct limited discovery related to the statute of limitations and administrative exhaustion."  (*See* Dkt. (minute entry for May 18, 2021).)  Plaintiff filed his First Amended Complaint on June 3, 2021, (*see* First Am. Compl. (Dkt. No. 49)), which was quickly followed by several letters, (*see* Dkt. Nos. 53, 56), and on July 12, 2021, Plaintiff filed his Second Amended Complaint, (*see* SAC).

On July 25, August 13, and August 16, respectively, Riggs, Basilone, and PCT and Persico filed pre-motion conferences in anticipation of filing motions to dismiss the SAC, to each of which Plaintiff responded.  (*See* Dkt. Nos. 67, 68, 69, 72, 73, 74, 75.)  On August 13, 2021, Union Defendants filed an Answer, (*see* Union Defs.' Answer (Dkt. No. 71)), and on August 24, 2021, Union Defendants filed a pre-motion letter in anticipation of moving for judgment on the pleadings, (*see* Dkt. No. 78), to which Plaintiff responded on August 27, 2021, (*see* Dkt. No. 80).  On September 28, 2021, Basilone filed an Answer.  (*See* Basilone's Answer (Dkt. No. 85).)

On October 4, 2021, the Court held a pre-motion conference and set a briefing schedule for all anticipated motions.  (*See* Dkt. (minute entry for Oct. 4, 2021); Dkt. No. 87.)  On November 22, 2021, Riggs and Union Defendants filed the instant Motions.  (*See* Riggs's Not. of Mot.; Riggs's Mem. of Law in Supp. of Riggs's Mot. ("Riggs's Mem.") (Dkt. No. 94); Decl. of

Michael J. Lauricella in Supp. of Riggs's Mot. (Dkt. No. 95); Union Defs.' Not. of Mot.; Union

Defs.' Mem. of Law in Supp. of Union Defs.' Mot. ("Union Defs.' Mem.") (Dkt. No. 97); Decl.

of Anthony Ascencao in Supp. of Union Defs.' Mot. ("Ascencao Decl.") (Dkt. No. 98); Decl. of

Steven H. Kern in Supp. of Union Defs.' Mot. ("Kern Decl.") (Dkt. No. 99).)  On December 4,

2021, Plaintiff filed his Oppositions.  (*See* Pl.'s Mem. of Law in Opp'n to Union Defs.' Mot.

("Pl.'s Union Opp'n Mem.") (Dkt. No. 100); Decl. of Robert Wisniewski in Opp'n to Union

Defs.' Mot. ("Wisniewski Decl.") (Dkt. No. 101); Decl. of Barbara Luberadzka in Opp'n to

Union Defs.' Mot. ("Luberadzka Decl.") (Dkt. No. 102); Pl.'s Mem. of Law in Opp'n to Riggs's

Mot. ("Pl.'s Riggs Opp'n Mem.") (Dkt. No. 103); Decl. of Barbara Luberadzka in Opp'n to

Riggs's Mot. (Dkt. No. 105); Decl. of Robert Wisniewski in Opp'n to Riggs's Mot. (Dkt.

No. 106).)  On December 6, 2021, Plaintiff, Basilone, and PCT and Persico filed a Proposed

Stipulation by which Plaintiff withdrew his claims for unpaid FLSA overtime and for failure to

provide wage notices pursuant to NYLL § 195.1 against PCT and Persico; PCT, Persico, and

Basilone adopted and relied on the arguments set forth in Riggs's Motion and Union Defendants'

Motion; and Basilone withdrew his Answer.  (*See* Proposed Stip. (Dkt. No. 107).)  The Court

entered the Stipulation the same day.  (*See* Stip.)  On December 18 and December 20, 2021,

respectively, Union Defendants and Riggs filed their Replies.  (*See* Union Defs.' Reply Mem. of

Law in Supp. of Union Defs.' Mot. ("Union Defs.' Reply Mem.") (Dkt. No. 110); Riggs's Reply

Mem. of Law in Supp. of Riggs's Mot. ("Riggs's Reply Mem.") (Dkt. No. 111).)

## II.  Discussion

### A.  Standard of Review

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively v. WAFRA Inv.*

*Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952

F.3d 67, 75 (2d Cir. 2020)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d

Cir. 2011) ("In deciding a Rule 12(c) motion, we employ the same standard applicable to dismiss

pursuant to Rule 12(b)(6)." (alterations and quotation marks omitted)).  The Supreme Court has

held that although a complaint "does not need detailed factual allegations" to survive a Rule

12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration

and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of

further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may

be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to

plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.  But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see also Lynch*, 952 F.3d at 74–75 (applying *Twombly* and *Iqbal* standards to Rule 12(c) motion).

When ruling on both a Rule 12(c) motion and a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted); *see also Cho*, 991 F.3d at 162 ("The standard of review for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion: we must 'accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor." (alteration omitted) (quoting *Bryan v. Credit Control, LLC*, 954 F.3d 576, 580 (2d Cir. 2020))). Additionally, when ruling on both types of motions, district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Lively*, 6 F.4th at 305 ("[C]ourts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice." (alteration and quotation marks omitted)).

B. Analysis

Plaintiff brings a total of nine causes of action against Defendants: (1) discrimination based on race or color under Title VII against PCT, Riggs, and Local 60, (*see* SAC ¶¶ 152–63); (2) discrimination based on race or ethnicity under § 1981 against PCT, Riggs, Local 60, Basilone, Afonso, and Fragoso, (*see id.* ¶¶ 164–71); (3) retaliation under Title VII against Riggs, (*see id.* ¶¶ 172–75); (4) retaliation under the NYSHRL against Riggs, Afonso, and Basilone, (*see id.* ¶¶ 176–80); (5) retaliation under § 1981 against Riggs, Afonso, and Basilone, (*see id.* ¶¶ 181–

84); (6) failure to pay prevailing wages and union wages based on the Con Ed contracts as a third-party beneficiary under New York law against PCT and Riggs, (*see id.* ¶¶ 185–98); (7) unpaid overtime under the FLSA against PCT, Riggs, Persico, Afonso, and Basilone, (*see id.* ¶¶ 199–203); (8) unpaid wages and overtime wages under the NYLL against PCT, Riggs, Persico, Afonso, and Basilone, (*see id.* ¶¶ 204–07); and (9) failure to provide wage notices under NYLL § 195.1 against PCT, Riggs, Persico, Afonso, and Basilone, (*see id.* ¶¶ 208–11). Plaintiff seeks declaratory relief in addition to both compensatory, statutory, and punitive damages. (*See id.* at 33.) Plaintiff has since withdrawn his claims for unpaid overtime under the FLSA and for failure to provide wage notes under NYLL § 195.1 against PCT and Persico. (*See* Stip.)

Both Riggs and Union Defendants argue that Plaintiff's Title VII claims must be dismissed for failure to exhaust. (*See* Riggs's Mem. 3–5; Union Defs.' Mem. 4–7.) Riggs additionally argues that (1) Plaintiff's Title VII claim for retaliation is subject to dismissal for the separate and independent reason that it is untimely; (2) Plaintiff's FLSA claim must also be dismissed as untimely; and (3) Plaintiff's NYLL § 195.1 claim must be dismissed because Plaintiff is not subject to this provision via his employment by Riggs. (*See* Riggs's Mem. 5–7.)

The Court addresses these arguments to the extent necessary to decide the instant Motions.

### 1. Procedural Deficiencies & Union Defendants' Motion

As a preliminary matter, the Court addresses the myriad of procedural issues in certain Parties' submissions—most notably in Union Defendants' submission. Union Defendants have filed what they claim is either a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings. (*See* Union Defs.' Not. of Mot.) However, basic principles of civil procedure counsel that a Rule 12(b)(6) and a Rule 12(c) motion are not alternatives. The plain language of Rule 12(b) states that "[a] motion asserting any of these defenses *must be made*

*before pleading* if a responsive pleading is allowed," FED. R. CIV. P. 12(b) (emphasis added), and the plain language of Rule 12(c) states that "*[a]fter the pleadings are closed*—but early enough not to delay trial—a party may move for judgment on the pleadings," FED. R. CIV. P. 12(c) (emphasis added).  Thus, the plain language of Rule 12 makes clear that a Rule 12(b)(6) motion and a Rule 12(c) motion are filed at different stages of a litigation.

Here, Union Defendants have already filed their Answer, which Union Defendants have made no attempt to withdraw.  (*See* Union Defs.' Answer.)  Therefore, Union Defendants' Motion clearly cannot be made pursuant to Rule 12(b)(6), as Union Defendants themselves reluctantly point out.  (*See* Union Defs.' Mem. 7 ("[T]echnically, the Union Defendants' [M]otion arguably does not lie under FRCP 12(b)(6), which governs pre-answer motions, for the obvious reason that the Union [D]efendants have filed an Answer to the SAC.").)  And while it is true that the Second Circuit has advised that a motion to dismiss "although styled as a Rule 12(b)(6) motion, could and should [be] considered as a Rule 12(c) motion for judgment on the pleadings" when filed after the filing of an answer, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126–27 (2d Cir. 2001), the Court cannot rule on Union Defendants' Rule 12(c) motion at this juncture either, "because the pleadings remain open [as to all other Defendants] and—indeed—[a] valid motion[] to dismiss remain[s] pending," *Johnson v. Myers*, No. 10-CV-1964, 2011 WL 709481, at *1 (E.D.N.Y. Feb. 18, 2011).  Union Defendants' Motion therefore cannot yet be made pursuant to Rule 12(c) either, as Union Defendants have, again, reluctantly conceded.  (*See* Union Defs.' Mem. 7 ("Technically, the instant motion arguably does not lie at this procedural moment under FRCP 12(c), because that rule applies 'after the pleadings are closed—but early enough not to delay trial.'" (quoting FED. R. CIV. P. 12(c))).

But even setting this procedural deficiency aside, Union Defendants "Rule 12(b)(6)/Rule 12(c)" motion is additionally improper because Union Defendants have attempted to put before this Court extrinsic evidence—including a declaration from a supposed fact witness and email communications that post-date the filing of the SAC, (*see* Ascencao Decl.; Kern Decl. Ex. D (Dkt. No. 99-4))—that clearly has not been incorporated by reference into the SAC, is not integral to the SAC, and is not subject to judicial notice, and therefore cannot be considered by the Court in ruling on either a Rule 12(b)(6) or a Rule 12(c) motion. *See supra* II.A. In fairness, however, Union Defendants are not the only parties to have committed this procedural blunder; indeed, Plaintiff has submitted two declarations which double as attorney declarations and declarations from fact witnesses in addition to post-SAC email communications. (*See* Wisniewski Decl.; Luberadzka Decl.; Luberadzka Decl. Exs. 1 (Dkt. No. 102-1) & 2 (Dkt. No. 102-2).)[3]

Taking all of the above into consideration, what Union Defendants have really filed is a premature Rule 56 motion for summary judgment. However, under Rule 56(d), "if a non[-

---

[3] Perplexingly, Plaintiff has submitted such extrinsic evidence while at the same time recognizing that the consideration of extrinsic evidence of this nature is improper on a Rule 12(b)(6) or Rule 12(c) motion. (*See* Pl.'s Union Opp'n Mem. 3–5 (pointing out that if the Court considers the Ascencao Declaration, the Court must convert Union Defendants' Motion to a Rule 56 motion).) Plaintiff appears to suggest that the Wisniewski and Luberadzka Declarations are "incorporated by reference" into Plaintiff's Opposition brief. (*See id.* at 1 ("The procedural history and relevant facts are set forth in the [SAC], the [Wisniewski Declaration] and the [Luberadzka Declaration] are incorporated by reference herein.").) However, the doctrine of incorporation by reference refers to materials that have been incorporated by reference into the governing *complaint*, not a plaintiff's opposition to a motion to dismiss. *See, e.g.*, *Bellin*, 6 F.4th at 473 (referring to consideration of documents "incorporated by reference *in the [c]omplaint*" (emphasis added)). This is only logical, because "it is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 453 n.11 (S.D.N.Y. 2021) (quotation marks omitted).

Accordingly, the Court will not consider the extrinsic evidence submitted by Plaintiff in ruling on the merits of the instant Motions.

]movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).  Here, Plaintiff has proffered the declaration of his attorney, who has clearly explained why Plaintiff "cannot present facts essential to justify its opposition" and set forth the information that Plaintiff will seek to obtain in discovery.  (*See* Wisniewski Decl. ¶¶ 14–17.)  Therefore, the Court denies Union Defendants' Motion without prejudice to refiling a procedurally proper motion for summary judgment after the Parties have conducted discovery.

### 2.  Title VII Exhaustion

"A plaintiff may bring an employment discrimination action under Title VII . . . only after filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)).  In addition, "a claim under [Title VII] must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quotation marks omitted).  However, the Second Circuit has "repeatedly held that [while] the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court [it is not] a jurisdictional requirement." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted); *see also Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 n.4 (2d Cir. 2018) ("[The Second Circuit] has squarely held that failure to present a

17

Title VII claim to the EEOC before filing suit in federal court 'is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court.'" (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000))). And because "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," it is "subject to waiver, estoppel, and equitable tolling." *Francis*, 235 F.3d at 767 (quotation marks omitted) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Put another way, rather than being an element of a Title VII claim, failure to exhaust "operates as an affirmative defense," and "the burden of pleading and proving Title VII exhaustion lies with [the] defendant[]." *Hardaway*, 879 F.3d at 491. Courts therefore deny motions to dismiss for failure to exhaust unless the failure "is clear from the face of the complaint." *Arnold v. Research Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016).

Riggs argues that Plaintiff's Title VII claims are subject to dismissal because Plaintiff has admitted in the SAC that he did not receive a right-to-sue letter from the EEOC with respect to the charge of discrimination Plaintiff filed against Riggs. (*See* Riggs's Mem. 3–5.) However, as Plaintiff points out, (*see* Pl.'s Riggs Opp'n Mem. 3–5), courts have held that "courts may waive or toll the statutory requirement of first obtaining a [r]ight to [s]ue letter if the plaintiff shows or alleges that she made an effort to procure the right to sue letter or that she raised the failure to issue a right to sue letter with the EEOC prior to filing a federal court action." *Milne v. Navigant Consulting*, No. 08-CV-8964, 2009 WL 4437412, at *4 (S.D.N.Y. Nov. 30, 2009) (alterations omitted) (quoting *Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 332, n.12 (S.D.N.Y. 2005)); *see also Crisci-Balestra v. Civil Serv. Emps. Ass'n, Inc.*, No. 07-CV-1684, 2008 WL 413812, at *3 (E.D.N.Y. Feb. 13, 2008) ("'Courts in [the Second] [C]ircuit have recognized that

the statutory prerequisites for bringing a Title VII suit in federal court may be waived in cases where a plaintiff has in some extraordinary way been prevented from asserting her rights, or when the EEOC has incorrectly refused to issue a right-to-sue letter.'" (quoting *Ishikawa v. City of N.Y. Dep't of Cultural Affairs*, No. 91-CV-7269, 1993 WL 362393, at *12–13 (S.D.N.Y. Sept. 14, 1993)) (collecting cases)).  Riggs urges the Court to find that Plaintiff has failed to allege that Plaintiff exercised the requisite due diligence in attempting to procure a right-to-sue letter from the EEOC to merit a waiver here.  (*See* Riggs's Mem. 4–5.)  However, the Court declines to do so at this early stage of the case.

Plaintiff has alleged in the SAC that after he received notice of DHR's dismissal of his first charge against Riggs, PCT, Basilone, and Afonso, he "submitted a written request for a review of DHR's findings to the EEOC but has not heard back from the agency."  (SAC ¶ 41.)  This allegation indicates that Plaintiff may have exercised at least some diligence in attempting to procure a right-to-sue letter, and given the procedural posture of both this case and this dispute—a Rule 12(b)(6) motion in which the Court must "draw all reasonable inferences in [P]laintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted), raising an affirmative defense for which Riggs bears the burden, *Hardaway*, 879 F.3d at 491—it is premature for the Court to determine whether Plaintiff exercised "due diligence," *cf. Howell v. 1199 Union*, No. 14-CV-174, 2015 WL 273655, at *5 (S.D.N.Y. Jan. 16, 2015) (dismissing Title VII claims where "[the plaintiff] has not stated that he exhausted his remedies by filing an EEOC complaint[;] [n]or has [the plaintiff] alleged that he obtained or even attempted to procure a right to sue letter").

Accordingly, the Court again dismisses Riggs's motion to dismiss for failure to exhaust "without prejudice to refiling a motion for summary judgment on Plaintiff's failure to exhaust

administrative remedies after the Parties have conducted limited discovery." (MTD Op. 12–13

(quoting *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *5 (S.D.N.Y. Dec. 21, 2016)).)[4]

### 3.  Timeliness of Plaintiff's Title VII Retaliation Claim

Riggs next argues that Plaintiff's Title VII retaliation claim is subject to dismissal as

untimely because Plaintiff has not alleged that he filed a retaliation charge with either DHR or

the EEOC, the time to do so has long passed, and Plaintiff's retaliation charge neither would

have been futile nor is reasonably related to his underlying discrimination claim. (*See* Riggs's

Mem. 5–6.)  Plaintiff does not dispute that he did not file a retaliation charge with either DHR or

the EEOC and that the time to do so has passed, but argues that Riggs has misinterpreted relevant

case law as to futility and "reasonably related" retaliation claims. (*See* Pl.'s Riggs Opp'n Mem.

5–7.)  Riggs has notably failed to respond to Plaintiff's arguments in Opposition, (*see generally*

Riggs's Reply Mem.); "[b]y failing to respond to that argument in its Reply Memorandum,

[Riggs] concedes the point for purposes of [its Motion]." *Cornelius v. Macy's Retail Holdings,*

*Inc.*, No. 18-CV-678, 2019 WL 11816537, at *2 (W.D.N.Y. Aug. 5, 2019) (collecting cases).

The Court therefore denies Riggs's motion to dismiss Plaintiff's Title VII retaliation claim.

---

[4] The Court does, however, offer a word of caution to Plaintiff.  This ruling was a close call, and Riggs is correct that "[f]ederal courts have typically extended equitable relief," including waiver of Title VII exhaustion, "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  To escape dismissal of Plaintiff's Title VII claims at summary judgment, Plaintiff will need to demonstrate that he made affirmative attempts to procure a right-to-sue letter; a mere demonstration that Plaintiff's right-to-sue letter was, for instance, lost in the mail after a single pro forma request, will not suffice. *See, e.g.*, *Tatas v. Ali Baba's Terrace, Inc.*, No. 19-CV-10595, 2022 WL 993566, at *6–7 (S.D.N.Y. Mar. 31, 2022) (declining to grant equitable tolling on summary judgment where "[the plaintiff] asserts that he never received the [right-to-sue] letter, and that he was not aware of its existence until his correspondence with defense counsel," but the plaintiff "does not dispute that the mailing address listed on the letter was his residence" and "fails to provide any explanation or evidence as to *why* he never received the letter" (emphasis in original)).  Moreover, the Court makes clear that any post-filing efforts by Plaintiff's *counsel* will not suffice to demonstrate that *Plaintiff* exercised due diligence in attempting to procure his right-to-sue letter before filing this Action. (*See generally* Luberadzka Decl.)

But even assuming arguendo that Riggs had not conceded this point, the Court would still have denied Riggs's motion to dismiss Plaintiff's Title VII retaliation claim.  The Second Circuit has explained that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Legnani*, 274 F.3d at 686 (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)).  "A claim 'alleging retaliation by an employer against an employee for filing' a discrimination charge is one type of claim that [the Second Circuit has] recognized as 'reasonably related' to the underlying discrimination charge." *Id.* (quoting *Shah*, 168 F.3d at 614).  The Second Circuit has even gone so far as to say that "retaliation [that] occurs while the EEOC charge is still pending before the agency" is "the paradigmatic case for which the 'reasonably related' doctrine was adopted," and that "[i]t is well established that the plaintiff may then sue in federal court on both the adverse actions that gave the impetus for the initial EEOC charge and the retaliation that occurred thereafter, even though no separate or amended EEOC charge encompassing the subsequent retaliation was ever filed." *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018); *see also Wein v. N.Y.C. Dep't of Educ.*, No. 18-CV-11141, 2020 WL 4903997, at *9 (S.D.N.Y. Aug. 19, 2020) ("[C]ourts in [the Second] [C]ircuit have generally allowed claims to proceed when the plaintiff plausibly alleges that the post-charge conduct was retaliatory." (collecting cases)).

This is precisely what Plaintiff has alleged here.  Plaintiff alleges that on June 22, 2017, he filed a charge with DHR naming Riggs, PCT, Basilone, and Afonso, which DHR dismissed on September 27, 2017.  *See supra* I.A.3.  On October 11, 2017, Plaintiff submitted a written request to the EEOC to review this determination from DHR.  *See id.*  Plaintiff alleges that at some point between June and December 2017, he was berated by Afonso and Basilone for filing

a complaint against them, and in December 2017, Plaintiff was fired.  *See id.*  Plaintiff has thus

clearly alleged that he suffered a retaliatory discharge over the course of EEOC's investigation

into and as a result of his discrimination complaint.  Therefore, Plaintiff's retaliation claim is

reasonably related to his discrimination charge.

### 4.  Timeliness of Plaintiff's FLSA Claim

Riggs also argues that Plaintiff's FLSA claim is subject to dismissal as untimely,

appearing to argue that Plaintiff's FLSA claim would be timely if the three-year statute of

limitations for willful FLSA violations applied, but that Plaintiff has failed to allege in a non-

conclusory manner that Riggs's alleged FLSA violation was willful.  (*See* Riggs's Mem. 6.)  In

his Opposition, Plaintiff identifies a series of allegations in the SAC which Plaintiff argues state

a claim for willful violation of the FLSA.  (*See* Pl.'s Riggs Opp'n Mem. 7–9.)  Riggs has, again,

failed to respond to Plaintiff's arguments in Opposition as to this point, (*see generally* Riggs's

Reply Mem.), and thus has conceded this point.  *See Cornelius*, 2019 WL 11816537, at *2.  The

Court therefore denies Riggs's motion to dismiss Plaintiff's FLSA claim.

And, again, even assuming arguendo that Riggs had not conceded this point, the Court

would still have denied Riggs's motion to dismiss Plaintiff's FLSA claim.  The Second Circuit

has explained that "[a]n employer willfully violates the FLSA when it either knew or showed

reckless disregard or the matter of whether its conduct was prohibited by the Act."  *Whiteside v.

Hover-Davis, Inc.*, 995 F.3d 315, 324 (2d Cir. 2021) (quoting *Young v. Cooper Cameron Corp.*,

586 F.3d 201, 207 (2d Cir. 2009)); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133

(1988).  "Therefore, a plaintiff must show more than that [a] defendant should have known it was

violating the law.  Should have known implies negligence or reasonable person standard.

Reckless disregard, in contrast, involves actual knowledge of a legal requirement and deliberate

disregard of the risk that one is in violation."  *Agureyev v. H.K. Second Ave. Rest. Inc.*, No. 17-

CV-7336, 2018 WL 4356731, at *2 (S.D.N.Y. Sept. 12, 2018) (quoting *Sikiotis v. Vitesse Worldwide Chaufeeured Servs., Inc.*, 147 F. Supp. 3d, 47 (D. Conn. 2015)).  "Courts in this Circuit have generally left the question of willfulness to the trier of fact," *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 28 (E.D.N.Y. 2020) (quoting *Ramirez v. Rifkin*, 568F. Supp. 2d 262, 268 (E.D.N.Y. 2008)); thus, "[c]ourts considering this question on motions to dismiss tend to favor findings of willfulness," *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 191 (E.D.N.Y. 2015).

Here, Plaintiff has alleged that for a nearly eight-year time period, he was employed by companies that touted themselves as union shops, were required to only hire union workers per their contracts with Con Ed, and yet actively obstructed Plaintiff's efforts to join a union, the only plausible purpose of which would be to deny Plaintiff the higher union pay and benefits to which he was entitled.  *See supra* I.A.  Plaintiff has also alleged that his employers failed to pay him the prevailing wage for a flagger in Westchester County throughout the entire period of his employment.  *See id.*  These allegations certainly evince at least a reckless disregard to pay Plaintiff the hourly rate to which he was entitled, which, by extension, means that these allegations evince at least a reckless disregard to pay Plaintiff the overtime rate to which he was entitled, as a worker's overtime rate is based on his or her base hourly rate.  *See Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 357–61 (E.D.N.Y. 2007) (explaining that "[i]t is firmly established that even employees who are paid in excess of the minimum wage may proceed under the FLSA if they do not receive time and a half for overtime," and agreeing that overtime must be based on "the rate that [the employees] should have received, pursuant to their [state] prevailing wage agreements," not "the hourly rate at which they have actually been paid").

Therefore, Plaintiff has adequately alleged that Riggs willfully violated the FLSA in failing to pay him overtime based on the proper prevailing wage or union pay rate.

### 5.  Applicability of Wage Theft Prevention Act to Plaintiff

Finally, Riggs argues that Plaintiff's claim under NYLL § 1945.1—the Wage Theft Prevention Act ("WTPA")—must be dismissed because Plaintiff is not subject to the WTPA, having been hired before the WTPA came into effect on April 9, 2011.  (*See* Riggs's Mem. 6–7.) The Court agrees.

There is no dispute among Riggs and Plaintiff that "the WTPA does not apply retroactively and an employee who began working before the WTPA took effect on April 9, 2011, may not bring a claim for an employer's violations."  (Pl.'s Riggs Opp'n Mem. 9 (quoting *Orellana v. One If By Land Rest. LLC*, No. 18-CV-7865, 2020 WL 5768433, at *13 (S.D.N.Y. Sept. 27, 2020)); *see also* Riggs's Mem. 6.)  There is similarly no dispute that Plaintiff began working for PCT before April 9, 2011—which is likely why Plaintiff agreed to withdraw his NYLL § 195.1 claim against PCT, (*see* Stip.)—rather, Riggs and Plaintiff dispute whether Plaintiff has alleged that he also began working for Riggs before April 9, 2011, (*see* Riggs's Mem. 6–7; Pl.'s Riggs Opp'n Mem. 9; Riggs's Reply Mem. 3).  Plaintiff argues that he did not begin working for Riggs until November 2016, when Riggs acquired PCT's assets and business, and this ownership change makes Riggs subject to NYLL § 195.1 as to Plaintiff even though there was no break in Plaintiff's employment.  (*See* Pl.'s Riggs Opp'n Mem. 9.)  *See also Orellana*, 2020 WL 5768433, at *13 (explaining that "the WTPA's wage statement obligations apply to 'employers,' who may change as they did in this case with [the] [d]efendants' employment of [the plaintiff] once they purchased the [business]," and finding that "any cause of action under the WTPA brought by [the plaintiff] against [the] [d]efendants would not be a retroactive application of the statute").  However, Plaintiff has specifically alleged that Riggs is

24

PCT's successor-in-interest and *not* simply PCT's purchaser, (*see* SAC ¶¶ 47–62), and a "successor-in-interest stands [in the] shoes of [its] predecessor-in-interest." *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 875 F. Supp. 1022, 1028 (S.D.N.Y. 1995). Plaintiff cannot have it both ways.

Based on Plaintiff's allegations that Riggs is PCT's successor-in-interest, the Court finds that Plaintiff's cause of action for violation of NYLL § 195.1 against Riggs is a retroactive application of the WTPA. It is therefore dismissed.

### III. Conclusion

For the foregoing reasons, Union Defendants' Motion is denied and Riggs's Motion is granted in part and denied in part. The Clerk of Court is directed to terminate the pending motions. (*See* Dkt. Nos. 93, 96.)

Because this is the first adjudication of Plaintiff's NYLL § 195.1 claim against Riggs on the merits, this claim is dismissed without prejudice. The Court will hold a status conference on October 13, 2022 at 10:30AM, at which the Court will discuss: (1) the schedule for a potential third amended complaint; (2) the schedule for discovery on exhaustion; and (3) the status of Afonso as a defendant, who has yet to make an appearance in this Action despite having been served on September 10, 2021, (*see* Dkt. No. 83).

SO ORDERED.

Dated:  September 20, 2022
        White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge